Good morning. This is the case of MHM Correctional Services versus Evanston Insurance Company 1-20-0552. The procedure we will follow, first of all, this is the first district second division appellate court in which you have Aurelia Paczynski, Cynthia Cobb, and myself, Justice Smith. The sequence of events, the appellant will get to present his case, and we will not interrupt. We'll let you complete it, then we'll ask questions. Then the appellee, the same procedure is followed, then we ask the questions, and then the appellant will close. With that in mind, you may proceed and make sure your speaker is on. The last case we did earlier, neither of them had their speakers on. So you can go ahead. Okay. Thank you. Good morning. May it please the court. My name is Kim Hartman, and I'm here on behalf of Evanston Insurance Company. Your Honors, Evanston is not required to defend MHM Correctional Services or the Massachusetts Partnership for Correctional Health Care, collectively MHM, in the three underlying lawsuits at issue in this appeal. Those class actions filed on behalf of inmates housed in the only. Those complaints do not aver any causes of action for individual bodily injuries or compensatory damages and do not seek the recovery of any monetary amounts. This is worth repeating, the underlying complaints do not aver any money damages. The Evanston policies only provide insurance for the insured's liability for damages, which is defined in pertinent part as the monetary portion of any judgment, award, or settlement. Because monetary damages are not alleged, there are no facts pled bringing the suits within or potentially within the Evanston MHM or any additional insured in those underlying lawsuits. This morning, I would like to focus my argument on this critical issue and address three points. One, under the policies plain and unambiguous terms, coverage is limited to the insured's liability for monetary damages, a type of relief not fed in the underlying complaints. Two, the Illinois Supreme Court's decision in Alford Marine does not support a broader interpretation of damages and contravention to the policy's written definition. And three, standard boilerplate prayers for other relief do not constitute claims for money damages that are not actually pled, and in fact, in some of the lawsuits, have been expressly denied. The focus must begin on construction of the insurance policy and what coverage is potentially provided under the insuring agreement, which is the burden of the insured to establish. Under the Evanston policies, insurance is limited to sums which the insured shall become legally obligated to pay as damages as a result of claims. Damages is a defined term. It means the monetary portion of any judgment, award, or settlement. Monetary portion clearly and unambiguously relates only to the part or section of a judgment, award, or settlement awarding money. The term monetary portion is not ambiguous. MHM doesn't argue that it's ambiguous. No court has held that the term monetary portion is ambiguous. Although no Illinois courts have interpreted the term monetary portion relative to a definition of damages in an insurance coverage case, two other courts have. They're both cited in Evanston's brief. Those cases are Evanston v. Bodie decided by the Central District of California and Evanston v. Gene by Gene in the Southern District of Texas. In the Bodie case, the court held that a claim under California's professional code known as the UCL did not satisfy the exact same definition of damages in our case. Under the UCL, a prevailing party is generally limited to injunctive relief and restitution. In that case, there was no consideration that costs to comply with the injunctive relief would fall within that definition of damages. Again, the exact same definition at issue in this case. Notably, MHM does not cite to a single case in which monetary portion is deemed ambiguous or is used in interpretation to include non-monetary compensation in the form of purely declaratory injunctive or equitable relief. MHM citation to cases in which damages are defined in a different and broader manner, for instance, damages that are as a result of or on account of are much broader than the more precise and narrow definition in Evanston's policy. Another point to make is that there's no need to exclude from the definition in Evanston's policy the costs for complying with an injunction. The definition is very clear. We can't write a standard isn't whether a different definition could have added additional terms, whether there might have been one that, you know, someone thinks would have been clearer. The question is whether the definition in this policy is clear and unambiguous, and it is. The contract cannot be rewritten. Next, the court needs to analyze whether or not there's any potential for a monetary judgment in the underlying cases. When you look at the plain and clear terms of the three there's no facts alleged in those complaints which contain any requests for relief for any monetary damages, and I think it's important to keep in mind that these class actions were all filed under federal rule of civil procedure 23d2, which actions declaratory and injunctive relief. If monetary damages were to be sought, there are different requirements regarding class certification, class notice, and the type of relief, and those claims would have been brought under 23d3. None of these cases allege a 23d3 action. When you look at the individual complaints, we turn to Dunn. Dunn is captioned as a class action complaint for declaratory and injunctive relief. Again, it's expressly brought under federal rule of civil procedure 23b2. There's no allegations for individual personal damages. There's no allegations, no recovery sought for any monetary amounts due to any of the named plaintiffs or potential. In fact, in the Dunn complaint, the plaintiffs aver that the plaintiffs and the classes that they represent have no In the Briggs case, the complaint's introduction states, seek declaratory and injunctive relief. Again, and as well, similar to Dunn, Briggs also is brought under 23 federal rule of civil procedure 23b2. In the Pasco case, the first sentence of the complaint states, this is a class action that seeks declaratory and injunctive relief. None of the cases cited by MHM can dispute the fact or support the fact that there are no allegations for monetary damages supported in these underlying complaints. Sure, there are statements regarding different pervasive and systemic issues that these inmates are having or that they allege at the various Department of Corrections. To provide context, there are statements regarding various injuries that some of the named plaintiffs may have sustained. Again, it's critical to remember that there's no allegation for recovery for any of those, for any individual prisoner. This leads me to turn to the next point, and that's Alford Marine. Alford Marine interpreted the term damages as an undefined term. Alford Marine does not control this case in which damages was more narrowly defined in the policy. Alford Marine, before it interpreted the term damages and before it held that damages in a common sense construction could include both compensatory, injunctive, and equitable damages, stated, this term is not defined in the policies. Therefore, we must interpret the term by affording its plain, ordinary, and popular meaning. This clearly establishes that Alford Marine does not control this case, and the definition is wholly irrelevant to the issue before this court. I think it's also important to note that the relief sought in Alford Marine was very different. In Alford Marine, they defined damages to include money one must expend to remedy an injury. It was an environmental case. It was a past injury. In this case, there can be no argument that any cost to comply with an injunction to order the Department of Corrections to proactively establish different policies and procedures is covered by liability insurance. Liability insurance is not to pay for the insurer to comply with federal law. In the Central Lake case, which is another Supreme Court case from Illinois, decided after Alford Marine, they made clear that what we learned from Alford Marine is that in the absence of policy language to the contrary, the term damages will be broadly interpreted. But again, that's not the case here. Evanston did what Alford Marine and Central Illinois Lake Company stated was necessary to restrict or to narrow or to limit the definition of damages, which is exactly what the O'Brien case, which Evanston cited below, and that MHM brought up in the reply brief, is a case that was decided by the second district after Alford Marine. In that case, that's an example of where another court, another Illinois court, in interpreting damages, a more broad definition of damages than the Evanston policy, limited Alford Marine to environmental cases. And that's another important distinction and something to keep in mind that Alford Marine was expressly decided in an environmental case where the federal government and the state governments provide maximum flexibility as to its statutes to provide the government with maximum flexibility to determine one type of relief versus another. And then the final point that I want to address is the prayer for other and further relief. A prayer for other and further relief is a standard boilerplate affirmant that cannot state, does not state on its own facts, which can bring the claim within coverage under Evanston's policy. It does not operate as an independent request for relief. If you look at the facts, the actual facts alleged in the underlying complaints, there are none that seek monetary damages. A court cannot speculate as to what additional or other facts could be alleged at a later date or what a federal court may do to amend, to allow amendments to the complete pleadings. What is the focus? What needs to be the focus is what is in the eight corners of the documents. What was actually pled within the four corners of the underlying complaints and what is written in the four corners of the insurance policies. And BH Smith and Bible Cork, the two main cases that MHM relies on in support of their argument regarding other and further relief does not help, does not help MHM. In BH Smith, the policy did not define damages. There's no interpretation in that case, which was decided under New York law regarding whether a complaint for declaratory judgment sought monetary damages. Another distinction in BH Smith is in the underlying complaint, there was a cause of action under section 43 of the Lanham Act. That section allows for the recovery of compensatory damages. Bible Cork is equally unavailing. Again, that case did not interpret the term monetary damages. The definition of damages or damages in that case was not defined. It's distinguishable from the point is that in that case, the court held that there was a duty to defend because the insurer had knowledge of true but unpleaded facts, which taken together with the allegations of the complaint brought the claim within or potentially within coverage. That is another reason to reply. Unless there's any questions. Questions now. I guess my real question is, it almost looks as though this policy doesn't cover anything. First of all, you don't allow for risks to be included in the coverage. You exclude most of them. They bought something that has no value. In the case itself, you divide in one section, you have damages. In the other section, you do not. It's almost as though you don't infer that you do need damages. I guess my real question is, what did you expect this contract to cover if a civil rights action was filed? Meaning, any civil rights action file should be covered under this policy. If that's the case, there's going to be costs and money expended beyond the exclusion or the one section of the policy. If that's the case, there is money damages thought out when this was written. I don't see you saying money damages needs to be shown in this policy. Thank you, Your Honor. To start with, to determine what coverage is afforded under the policy, you have to go to the insuring agreement. That's the place where you start. That's the place where the grant of coverage is established. We don't define coverage. I'm sorry, Your Honor? You don't define coverage. You keep speaking about whether it's applied or if it kicks in when it's covered. In other words, you don't, in this policy, really tell us what risks are covered. Your Honor, that would fall under the definition of a claim. There's no dispute here that the suits allege a claim. The meaning of a claim includes the service of suit or institution of arbitration proceedings against the insured involving professional health care services. There's no dispute that a claim has been made, but the question is whether or not there is coverage. For that, again, you need to look to the insuring agreement. I want to quote from the insuring agreement because this is important. It states, the company shall pay on behalf of the insured all sums in excess of the deductible amount stated in the declaration, which the insured shall become legally obligated to pay as damages as a result of claims first made against the insured during the policy period or during the extended policy period. What is provided under the insuring agreement is, or what Evanston is required to pay under the insuring agreement are all sums which the insured is legally obligated to pay as damages as a result of a claim. Damages, when Evanston states that damages mean the monetary portion, that does not make coverage illusory. It does not, I mean, there's certainly plenty of circumstances where coverage would be afforded, and an example would be if there was a suit brought against MHM by inmates, and it could be individual complaints. It could be a class action complaint under federal civil procedure 23 B3. It could allege violations of the eighth and the 14th amendment and the ADA and various other statutes, and if those complaints are seeking monetary damages for personal injury, for bodily injury, for any other type of compensatory injury, then they would be potentially covered, but what the policy does not cover are non-monetary damages, and this makes sense, and I think in the context, maybe if I answer it in the context or give you an example outside of this policy, that may help, but I think at the end of the day, you need to, when you look at MHM, which is a health service provider, which provides services and staff to certainly foreseeable that they will be sued in relation to the services that they provide or that they allegedly don't provide. What this insurance provides is for their liability to pay monetary damages, to pay compensatory damages for that liability, but what it doesn't cover is injunctive and declaratory relief, which require MHM to comply with federal law. That's not the point or the purpose of a liability policy, and to give an example outside of this context, maybe it would be a bit clearer, but let's say that I'm an insurance company, and I insure a manufacturer of airbags, and those airbags are defective, and there's a lawsuit, there could be one lawsuit, there could be 10, there could be 20, there could be a class action, and those lawsuits, let's say those lawsuits allege that there were serious injuries, that people were in cars, they were driving cars, they got in accidents, there were serious injuries. Those lawsuits allege liability against MHM and seek monetary or compensatory damages. Those suits would allege a claim for damages within the definition of the policy, but let's switch it up. Let's say that instead of seeking personal injuries, bodily injuries, there was a class action lawsuit for injunctive relief against the airbag manufacturer, ordering them to comply with federal law regarding the production and manufacturing of airbags. This policy would not cover, and I would venture to say most liability policies wouldn't cover those type of damages, because those are costs that the manufacturer, that the insured, is required to do to comply with federal law. So I have a question. So let's just, I'm trying to follow your argument, so let's just say that MHM proceeds and without Evanston defending, they proceed and there is a judgment against them, and part of the judgment is for money, excuse me, money damages. Does Evanston then indemnify? Is that what you're saying? You would only indemnify? Well this is a question regarding a duty to defend. Yes. The issue of indemnity is not an issue, but if there certainly, if there was an amended complaint at some point and it alleged something entirely different than what's alleged in the underlying complaints and sought some type of monetary compensatory damages, then yes, there potentially would be coverage. And if the case was not at trial, there potentially would be a duty to defend. But I think that also raises an important point in looking at who the insureds are in this case, and it's a contrast to who the insureds were, or who the plaintiffs were, sorry, who the plaintiffs in the underlying case are in this, in these actions, and contrast that to the plaintiffs in the outboard marine case, the central light case, a lot of these other aspects and lawsuits. The plaintiffs in this case are inmates. They're not seeking compensatory damages or the costs to implement different procedures, different policies, additional staff at the Department of Corrections. They're never going to be entitled to those damages. They're not going to allege, you know, they're not going to allege those in the complaints. Now they could potentially, I mean, there could be such circumstances where inmates in a class action lawsuit may allege personal injuries, but that would need to be followed under a federal 23B3 action. And one of the cases cited by MHM is the, it's the Petoskey v. Missouri case. And it's very, very similar to the PASCO case. That's the underlying PASCO case at issue here. In the Petoskey case, and that's pending, that was pending in Missouri, the underlying class action lawsuit alleged that there were inmates with hepatitis C who were not given this allegedly breakthrough medication that was available in 2014. In that case, the court noted that there are no class-wide issues relating to damages because the class seeks only equitable relief. It stated that there were no demands for individual treatment dependent upon individual factors and that the class plaintiffs did not seek monetary relief. It went on to say that there could be a class action lawsuit that alleged both a 23B2 class for injunctive and declaratory relief and a 23B3 action for bodily injury or compensatory damages, you know, a legal action. And those could be, it could be tried in subsets, it could be subclasses. So it's possible, but in this case, it was only a 23B2 action for injunctive relief. And that clearly, if you look, you need to, I urge the court to look at the clear and written terms of the insuring agreement, which again is the insured's burden to establish or to prove that there's coverage under the insuring agreement. And damages is defined, it's defined as the monetary portion of any judgment award or settlement. And no court, no case that I'm aware of has said that the monetary portion, that phrase, monetary portion of judgment award or settlement is ambiguous. The court doesn't have discretion to rewrite the terms of the insurance contract if it's clear and unambiguous. You know, that, we've discussed one side of what triggers a complaint, but here we have a complaint, we have a claim, we have a demand, and then you've got a demand for services or a suit for services. And whether or not they seek money damages, it does say that that's supposed to be covered. I mean, so you would ignore what the judge basically ruled. Well, certainly Your Honor, Evanston's position is that Judge Hall interpreted the policies incorrectly. I also think it's important that the order, when Judge Hall granted summary judgment on the duty to defend on behalf of MHM, it wasn't because she found, let me go back and see if I can find the exact language, it wasn't because she found that had been pled in the underlying complaint. She based her opinion on the averments for other and further relief. It's actually found, believe it's in her September 29th, 2017 order. She stated that Evanston has a duty to defend MHM based on the court's finding that the underlying complaint's prayer for other relief constitutes a claim for damages under the Evanston policies. And as I previously discussed, there's really no support for that. That's a boilerplate standard averment. It's contained in almost every complaint that's filed and it doesn't act as an independent cause of action or an independent claim for relief. And again, I would urge the court to go back and read the insuring agreement. That's the first place that the court looks to determine whether there's coverage. And then you stop. If there's no coverage, you don't look further into the policy as to what exclusions may be included or really any other area. The first, the threshold question is whether MHM as the insured has established a potential for insurance under the insurance agreement. And that's black letter law in Illinois. Any other questions? No. I have nothing. John, you can go ahead. Thank you. Your voice isn't on. Can you hear me now? Yeah. Thank you. Thank you, your honor and may it please the court. Two main facts to start off with. This policy was issued to a provider of healthcare services to prisons. And it was specifically endorsed to cover civil rights actions under U.S. code 42, section 1983. And it wasn't, that's not in the regular policy. That is an endorsement added to policy. You can find it, I believe at C617 is one example of that endorsement. And it, so you have here a policy that was specifically endorsed to cover this kind of risk. And I note that in the endorsement that aside from adding section 1983 claims to the definition of what's covered and removing or modifying the exclusion for discrimination to not include those claims, there's also several provisions that contemplate claims by multiple prisoners. And then telescope those multiple claims down to be one claim for purposes of limits. So this was, this is not a case where an insured is trying to stretch a policy to fit a risk that meant to be covered by the policy. It's something that's squarely within the coverage, squarely contemplated, and even the class action part of it was squarely provided for and thought about by the insurance company in providing this. That's thing one. Thing two is that this is a duty to defend case. We have myriad cases throughout Illinois over many, many years that find, that say the facts are what determine whether it's a duty to defend, not the whims of the pleader as to what relief they request, not the request for relief, but courts will look and say, oh, look, it's an antitrust case that's not specifically covered, but there's defamation claims that are factually pled in there. And of course, in those circumstances, you don't have any specific theory pled or claim for relief. I just know those two things at the outset as kind of a framework for thinking about the specific arguments, because what we see is Evanston is not going to square exclusions that cover things or, you know, something in the policy that suggests this wasn't meant to be covered. They're trying to stretch terms in order to I think the three main points are, one, you don't need damages of any sort for a duty to defend under this policy. Two, if you do need damages as defined in the policy and it's specifically pled in the complaints, outboard marine controls and mandatory injunctions count. And three, even if you don't agree with that and construe the policy to require a potential for compensatory damages, the prayer for relief argument certainly covers that. So I want to start with the duty to defend in this case. The duty to defend applies to all claims, Evanston commits to defending claims for defined as a demand for money or services. Okay. As Judge Smith pointed out, these are clearly claims for services. No matter how you look at them, the professional services of MHM to be different than they are. What Evanston argues to say that you need damages said, well, wait, you have to bring back in the coverage clause. And so the claims have to be for money or services that seek damages. Well, they get there because the clause itself, the defense clause says that Evanston shall have the right and duty to defend and investigate any claim to which under this coverage part applies. So they're saying that we're doing a lot of work, but the word applies. And then they go back to the coverage clause and they say, basically we're collapsing the duty to defend into the duty indemnify. And that brings back in the damages part of the coverage clause. But interestingly, what that interpretation does is it erases the money that seeks damages. Okay. That makes sense. But if you say that you have to be seeking damages and you've got an or right between money or services demand for money or services, but a demand for services alone can never be something that has to be defended because it has to be for money. So, you know, it violates the rule against just erasing parts of policy to fit the conclusion you want to get. And another interesting point there is if you look at, and this is something that's in our facts, but wasn't explicitly drawn out. I noticed in preparing the self-insured retention endorsement, which replaces the defense obligations point has two different standards set up one for when there's a defense within the third party administrator. And then there's another clause or Evanston defending once the self-insured retention is exhausted. And the language is very illuminating. In the first case where the TPA is defending, the TPA is to defend any claim against the insured seeking damages to which this insurance applies. Okay. Well, that language applied, maybe Evanston would have a point, but the language for Evanston defending in excess of the self-insured retention leaves out the words seeking damages. Well, if Evanston's right about their interpretation of the policy, in other words, seeking damages in the TPA clause are completely superfluous and they shouldn't, they shouldn't be there in the first place. So anyway, I think as judge Smith pointed out that there are plenty of policies, including this one that defend claims that will never be covered by the indemnity clause. And it's worth pointing out that Evanston's own policy has that feature. In Evanston's own policy, there are provisions for defense where there's no actual coverage for the risks that are involved. So, you don't ever have to reach the damages question to find there's a duty to defend here. And that's also consistent with regular duty to defend principles that if the kind of risk covered is alleged factually in the complaint, there's a duty to defend because anything can happen. But let's go to the point, the outboard marine point. In outboard marine, you have, and this, this is the point where if you do explicitly have requests for mandatory injunctions in all of these claims under section 1983. Outboard marine defined damages just using the ordinary popular meaning of the term and that definition, paying money to remedy a legal infraction or legal wrong was what they said it means. And then they applied that ordinary popular definition to an environmental mandatory injunction to clean up pollution. In doing so, that definition is indistinguishable from the added definition that Evanston brings to the policy. Because the monetary portion of any award or judgment is going to include either totally be or include a mandatory injunction, which causes the insured to have to pay money. I think the gist of their argument to give it the strongest form is to say by saying monetary portion, it is setting up a distinction between the monetary portion and some other portion. But if what that is meant to be is money versus equity, reversing outboard marine, it doesn't do a very good job of it. Exclusions are supposed to be clear and unequivocal. There's lots of injunctive relief, which is not a mandatory injunction. You could have in the same pollution place an injunction that says stop polluting. It doesn't require expenditure of money. It just says don't do this. But a mandatory injunction says pay money to make this happen. So if this portion is supposed to set up a dichotomy between compensatory damages and equitable relief, it doesn't work. You could certainly have, in my example, a judgment that would be stop polluting, pay for cleanup of pollution, and stop polluting would be the non-monetary portion, and the clean up the pollution by paying money would be the monetary portion. So I don't think logically the argument works. And also the outboard marine was very clear in saying if an insurance company had desired to restrict coverage, only those suits seeking legal compensatory damages, it could have easily included among its exclusionary provision an exclusion pertaining to the cost of complying with the mandatory injunction. Well, Evanston's done this. As we've cited in our brief, a couple of publicly filed briefs from 2006, the Evanston versus Manganiella case, and from 2009, the Evanston versus Jay case, it's clear that Evanston, long before they issued these policies, 2013 to 2015, knew how to do this. And they did it in other contexts. And is there a reason why they didn't? Yes, there's a reason. Because they explicitly intended to cover section 1983 class action claims. So they know how to do it. They didn't do it. Supreme Court said they should do it. And they're trying to make this very subtle monetary portion definition do an awful lot of work. And that's contrary to the axiom that exclusions have to be clear, not equivocal. Finally, Evanston says there's no case where the monetary portion language of its policy has been construed against it in an equitable relief situation. The Cornerstone versus Evanston site, case that we cite on page 16 of our brief, is exactly that. It's from the Maryland District Court. And it has the exact same language. It involved a foreclosure consultant who had restitution relief ordered against him. And the court said very explicitly, we don't see anything in this definition that distinguishes between legal and equitable relief. So the only case that's squarely on Evanston's language and involving this issue goes against it. Albeit from District Court in Maryland, but there it is. The third point on this is the prayer for relief, which is what Judge Hall actually focused on. It's again, it is just part and parcel of the standard duty to defense standard. The cases that Judge Hall relied on, B.H. Smith and Bible work, are saying a lot more than if the complaint covers the kind of risk that the policy covers. That catch-all definition, catch-all request for relief, certainly makes it a potential for damages. And I think a really interesting point to make about those cases in this case, is that Bible work in particular involved a nuisance claim for a pig farm that had not yet even been established. The neighbors were really mad about this. They didn't want a pig farm with lots of stink coming. So what they sought was a declaratory, among other things, they wanted I guess an injunction ahead of time. But more importantly, they wanted declaratory relief that this would be a nuisance. And what the court and Bible work said is, well, when you get declaratory relief that something's illegal, the declaratory relief act allows you to seek supplemental relief in the same case for damages. And the prayer for relief sort of accounts for that. And there's a very strong parallel here. In all of these cases, there's not just a request for injunctive relief, there's a request for declaratory relief. And Judge Hall was very focused on what are the facts pled here that make this come within the possibility of compensatory damages available. And she actually made us do for each case, little sub briefs that walk through the facts. In our brief, we actually block quoted several of those for these various cases. And the reason she did that, I think, is again, it's due to this case, is that these prisoners get a declaration that they're the conduct of the medical care in the facilities is violated. It's cruel and unusual punishments violated section 1983. They've all alleged horrible things that happened to the individual class plaintiffs that they could then get supplemental relief from the declaratory judgment act for damages, compensatory damages. So if you need compensatory damages, Judge Hall got it exactly right that the prayer for relief provides for that. And I note that the cases cited by Evanston reflect a clear line in Illinois law that you can't just use a catch all prayer for relief to come up with a completely new theory or something that's not grounded in the facts of the case. For example, in the body walks case for judge shader held that the prayer for relief didn't help the insured. The issue was not that relief couldn't be granted based on the facts. What he said was this was a case against a helicopter company that caused injury and potentially against the broker and the insurance company. And he said, well, wait, there's not even judgment against the helicopter company yet. And you got to get that before you're going to go after the broker for producing an inaccurate policy. It's not a direct action state. You can't do that. And you find that same theme in the other cases that people say, well, look, this catch all prayer just brings in anything. And the courts say, well, no, you got to have the facts. And as judge hall was very careful to make us do, we have the facts. There's lots of injured plaintiffs that are saying, you know, I was, I was hurt by the lack of medical care, the bad medical care. And you can, we can walk through it in pages 26 through 20, through 31 of our brief. And then one last point on this, I guess too, these are all federal cases, federal rule 54 C says that the federal court is entitled to grant whatever relief the facts show making this standard very explicit, even without the catch all prayer for relief. And we just point that out in the brief, I think as a tag to this, and I'll fold this into this point. We, we, we make the point that the Liggins case which was a hep C case, which is not before the court as one of the three cases involved in the particular interlocutory appeal, but the Liggins case had an explicit request for compensatory damages. And we make the point that under the Wilkins case, you could read that into these other complaints. And I don't know that we need to go there. I think it's, it's almost more illustrative of the duty to defense standard that certainly these plaintiffs could ask for that kind of relief if they want to. And, you know, like I said, with the declaratory judgment, they could have, they could have simultaneously asked for, for damages based on their expected declaration, or they could wait. They could do it either way. And I just want to address the evidence and points out the certification motions where several of the plant, the underlying plaintiffs here in trying, you know, actually plaintiffs want to do in trying to get certification. They say, well, we're not looking for individual damages because that might mess up the class. I think that actually proves the opposite. If they need at that point in the case, well down the road to explain to the court that they're not seeking individual damages, then clearly that was something that the case had in it potentially, you know, and so I think as far as the initial duty to defend, it actually proves the opposite of what Evanston wants it to prove. Does it help them that there are these class action certification arguments that say we're not seeking compensatory damages? It doesn't help them. As we've pointed out in the brief, if something changes, if something makes, and this is again, just on the, if you need compensatory damages, if something makes coverage, provides a basis for the insurer to withdraw from a defense, they have to get a judicial okay stamp on that to do it. That's what our Supreme Court said in the general agent's case. That's what the Mark Kajinakis case that we cited on page 35 of our brief says. So far, they've only gotten judgments that they do have to defend. And we made this point actually not in the summary judgment motion, but in defending against opposing the interlocutory appeal, made the point to Judge Hall that, wait a second, they shouldn't be appealing this now because either the appellate court or you are going to have to decide this issue of whether they still have to pay all the defense costs because they initially decided to defend and then tried to withdraw later based on some argument where they did not have a judicial ruling allowing them to do so. Evanston says we waived it. We hardly waived it. It was raised. But even if it was something not raised, the court can always affirm on any basis. We cited that law in our briefs. I just want to make a point about the contractual liability exclusion. It completely doesn't apply in this case. This is not made clear in the briefs except for that in Briggs and Posco, MPCH was the defendant. It's true that the Department of Corrections were also defendants. But what's clear, it's very clear in Judge Hall's ruling is that she was only ruling with respect to MPCH's defense costs. And the only reason it was restricted to that is because the Departments of Correction never asked for their own defense costs in those cases. So in Briggs and Posco, it was the named insured's direct liability for statutory tort liability that's at issue. You never even get to a contractual liability exclusion, which only has to do with whether, you know, it's an alternate ground for recovery that was raised in the pleadings below. But Judge Hall expressly on April 20th of 2017 said, I'm not going to decide those alternate bases now. I just want to focus on the direct duty to defend for the parties at issue in each of these cases. So for Briggs and Posco, it was the duty to defend them. The costs at issue are their personal defense costs. In Dunn, MHM was not a party, but the declaration we asked for and got from Judge Hall was, is the Alabama Department of Corrections in that case a direct insured under the additional insured provision? And the answer she gave was yes. So again, never got to the contractual liability coverage. You never even get started on the important point to make. That may rise. It's being litigated right now in the lower court on the Dockery case, another case. But it's not here on this appeal. And then... And so you're going to have to wrap up pretty soon. Okay. I'll just make one quick point. The additional insured coverage, Evanston's point seems to be that straightforwardly applies when the insured has a contract for indemnity or insurance. I point out that there's both in the underlying contracts. Our brief talks about the indemnity, but also in the page right before that, C1953 is the indemnity. C1952 is the portion of the contract with the Alabama Department of Corrections that is to get insurance. The only real argument made by Evanston is that there's a condition that if the insured is not covered, then the named insured is not covered, then the additional insured cannot be covered. When done, which is the only case this applies to, the additional insured, the named insured wasn't sued. And so it's actually not possible for a determination one way or the other of coverage. It just doesn't come into place. And Judge Hall put it very succinctly. There's nothing in the policy that says the named insured has to be sued for the additional insured provision to apply. I'll stop. Thank you for your patience. Questions? Absolutely. I have none. None. Okay. Kimberly, you may close. Thank you, your honors. I just want to very briefly again, emphasize and urge this court that the threshold issue is the interpretation of the insuring agreement. The definition of damages is contained in the insuring agreement. It's not an exclusion. It's where you start to, it's where the court needs to start and examine and look at whether there's any potential coverage in this case. And I think I heard counsel say that, you know, damages, maybe damages aren't important, but that's the key issue in this case. The insuring agreement provides the terms for when coverage is available. And it's only available for liability to pay damages, the liability of the insured for damages as a result of claims. And again, there's no dispute that there was a claim made, but there is a question regarding damages. And when you go back and you look, you know, I'd like to emphasize when you go back and you look at those hundreds of pages of underlying class action lawsuits, none of them state any claim for personal or bodily injury. There are facts regarding certain injuries or certain damages that support a claim or an allegation that there's systemic impervasive problems at the department of corrections, but there's no allegations of compensatory damages on behalf of these individual plaintiffs. I also think it's important to look at the claims for equitable and injunctive relief and understand that these plaintiffs, even if there's a cost assumed for MHM to comply with federal law, that those costs aren't associated with plaintiffs. Plaintiffs will be able to claim those costs. I'm sorry, plaintiffs will never be able to claim those costs. So when you're hypothetically looking at whether or not the underlying complaints could be amended to include a claim for monetary damages or monetary relief, you're really looking to see whether they could claim bodily injuries. And in this case, again, you have to take notice that they're 23B2 actions. They're not 23B3 actions. I think that's important because that would really be a bar to plaintiffs being able to, in this action, in this class action, to seek those type of damages. I also just want to briefly note, counsel discussed the Cornerstone case as a single case in which another court has interpreted the Evanston's policies definition of damages within the insuring agreement. And I would ask the court to read that case because in that case, the issue was whether restitution for services or goods was led in the case, which is excluded under the Evanston policies. And it wasn't. What the plaintiffs in that case were asking for was restitution for the equity stripped from their homes. And so that case is really wholly irrelevant to this case. Would you wrap it up? Yes, Your Honor. So again, I think the final point that I want to go back into read Alford-Marine. Alford-Marine defined damages as an undefined term. Evanston did exactly what Alford-Marine instructs to do if you want a more narrow definition of damages. And for all of these reasons, as well as the reasons contained in the briefs, Evanston would ask this court to reverse the underlying grant of summary judgments. Thank you, Your Honor. You both made very nice presentations. This is, I thought, a heavy case. So we'll batter it around and see what we get. But again, thank you very much for your presentations. You were both very succinct.